No. 24-60109

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

LIBERTY ENERGY, INC., NOMAD PROPPANT SERVICES L.L.C.,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO
PETITIONERS' EMERGENCY MOTION FOR ADMINISTRATIVE STAY
AND STAY PENDING JUDICIAL REVIEW

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
DANIEL STAROSELSKY
Assistant General Counsels

JOHN R. RADY
Appellate Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4997 (Rady)

## CERTIFICATE OF INTERESTED PERSONS

*Liberty Energy Inc. et al. v. SEC*, No. 24-60109

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. The Securities and Exchange Commission is a federal agency.

2. Liberty Energy, Inc.

3. Nomad Proppant Services L.L.C.

4. Megan Barbero, Michael A. Conley, Tracey A. Hardin, Daniel Staroselsky, and John R. Rady—*Counsel for Respondent Securities and Exchange Commission.*

5. Katherine C. Yarger, R. Trent McCotter, Jonathan Berry, Michael Buschbacher, Jared M. Kelson, Caleb Orr—*Counsel for Petitioners*

/s/ John R. Rady

*Attorney of Record for Respondent*
*Securities and Exchange Commission*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

TABLE OF AUTHORITIES ............................................................................... iv

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 6

I.     Petitioners' requests for relief are premature. ................................................ 6

II.    Petitioners have not shown that a stay is warranted. ..................................... 9

       A.     Petitioners are unlikely to succeed on the merits. .............................. 9

              1.   The Final Rules are within the Commission's statutory
                   authority. ...................................................................................... 9

              2.   The Final Rules are consistent with the First Amendment. .......... 14

              3.   Petitioners' APA arguments are meritless. ................................... 19

       B.     Petitioners will not be irreparably injured without a stay. ................. 21

       C.     The remaining factors weigh against a stay. ...................................... 23

CONCLUSION ................................................................................................... 24

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alimi v. Ashcroft*,
    391 F.3d 888 (7th Cir. 2004) ............................................................ 6

*Am. Relay League, Inc. v. FCC*,
    524 F.3d 227 (D.C. Cir. 2008) ....................................................... 20

*AMI v. U.S. Dep't of Agric.*,
    760 F.3d 18 (D.C. Cir. 2014) .......................................................... 15

*Anibowei v. Morgan*,
    70 F.4th 898 (5th Cir. 2023) ........................................................... 21

*A. O. Smith Corp. v. FTC*,
    530 F.2d 515 (3d Cir. 1976) ........................................................... 21

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ....................................................................... 10

*BST Holdings, L.L.C. v. OSHA*,
    17 F.4th 604 (5th Cir. 2021) ........................................................... 21

*Bus. Roundtable v. SEC*,
    647 F.3d 1144 (D.C. Cir. 2011) ..................................................... 20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
    447 U.S. 557 (1980) ....................................................................... 18

*Chamber of Com. v. SEC*,
    85 F.4th 760 (5th Cir. 2023) ............................................... 15, 17, 18

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ....................................................................... 19

*Free Speech Coal. v. Paxton*,
    No. 23-50627, 2024 WL 982225 (5th Cir. Mar. 7, 2024) ............... 16

*Full Value Advisors, LLC v. SEC,*
 633 F.3d 1101 (D.C. Cir. 2011) ........................................................ 15

*Ga. Repub. Party v. SEC,*
 888 F.3d 1198 (11th Cir. 2018) .......................................................... 8

*Lorenzo v. SEC,*
 139 S. Ct. 1094 (2019) ...................................................... 10, 14, 16

*NAACP v. Fed. Power Comm'n,*
 425 U.S. 662 (1976) ........................................................................ 10

*NAM v. SEC,*
 800 F.3d 518 (D.C. Cir. 2015) ..................................................... 16, 17

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
 138 S. Ct. 2361 (2018) ................................................................ 16, 17

*Nken v. Holder,*
 556 U.S. 418 (2009) ........................................................................ 23

*Ohralik v. Ohio State Bar Ass'n,*
 436 U.S. 447 (1978) ........................................................................ 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
 575 U.S. 175 (2015) ........................................................................ 10

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.,*
 475 U.S. 1 (1986) ............................................................................ 22

*SEC v. Wall St. Publ'g Inst., Inc.,*
 851 F.2d 365 (D.C. Cir. 1988) ......................................................... 15

*United States v. Phillip Morris USA Inc.,*
 566 F.3d 1095 (D.C. Cir. 2009) ....................................................... 18

*United States v. Wenger,*
 427 F.3d 840 (10th Cir. 2005) ......................................................... 15

*Wages & White Lion Invs., L.L.C. v. FDA,*
 16 F.4th 1130 (5th Cir. 2021) ............................................................ 9

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
　751 F.2d 721 (5th Cir. 1985) ........................................................ 7–8

*West Virginia v. EPA*,
　597 U.S. 697 (2022) ........................................................................ 9

*Zauderer v. Off. of Disciplinary Couns.*,
　471 U.S. 626 (1985) ............................................................... 16, 17

## **Statutes**

Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74 ......................... 10

Securities Act of 1933, 15 U.S.C. 77a, et seq.

　Section 2(b), 15 U.S.C. 77b(b) ...................................................... 10

　Section 7(a)(1), 15 U.S.C. 77g(a)(1) ........................................ 2, 10

　Section 9(a) 15 U.S.C. 77*i*(a) ...................................................... 8

　Schedule A, 15 U.S.C. 77aa ......................................................... 2

Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq.

　Section 2, 15 U.S.C. 78b ............................................................. 10

　Section 3(f), 15 U.S.C. 78c(f) .................................................... 10

　Section 10(b), 15 U.S.C. 78j(b) .................................................. 13

　Section 11A(a)(1)(A), 15 U.S.C. 78k-1(a)(1)(A) ........................ 14

　Section 12(b), 15 U.S.C. 78*l*(b) ............................................. 3, 10

　Section 12(g), 15 U.S.C. 78*l*(g) ............................................. 3, 10

　Section 13(a), 15 U.S.C. 78m(a) .............................................. 3, 10

　Section 14(a), 15 U.S.C. 78n(a) ................................................. 13

　Section 25(c)(2), 15 U.S.C. 78y(c)(2) ......................................... 6

28 U.S.C. 2112(a) ........................................................................... 1

28 U.S.C. 2112(a)(4) ....................................................................... 7

## Rules and Regulations

17 C.F.R. 240.10b-5 ........................................................ 13

17 C.F.R. 240.12b-2 .......................................................... 5

17 C.F.R. 240.14a-9(a) .................................................... 13

5th Circuit Rule 27.3 ......................................................... 7

Federal Rule of Appellate Procedure 18(a)(1) .................. 6

Federal Rule of Appellate Procedure 18(a)(2)(A) .............. 6

## Commission Releases

*Business and Financial Disclosure Required by Regulation S-K*,
   81 Fed. Reg. 23,916 (Apr. 22, 2016) ............................. 12

*Environmental and Social Disclosure*,
   40 Fed. Reg. 51,656 (Nov. 6, 1975) .............................. 12

## Other Authorities

EPA Comment on SEC Proposed Rule (June 18, 2022),
   https://www.sec.gov/comments/s7-10-22/s71022-20132508-302990.pdf ....... 13

H.R. Rep. No. 73-1383 (1934) ...................................... 10

## INTRODUCTION

Petitioners challenge rules adopted by the Securities and Exchange Commission that require the disclosure of certain climate-related information in registration statements and annual reports. As the Commission explained in adopting the rules, climate-related risks—and a public company's response to those risks—can significantly affect a company's business and financial performance. The Commission adopted the rules to provide consistent, comparable, and reliable information about these risks and thus to protect investors, promote market efficiency, and facilitate capital formation. The Commission made it clear that it is agnostic about whether or how registrants consider or manage climate-related risks.

Petitioners seek emergency relief, but their asserted harms are not immediate. The challenged rules, which have not yet been published in the Federal Register, have extended compliance dates that will not require any disclosures before March 2026 at the earliest. And there is no reason to rule on petitioners' stay motion now, before the Judicial Panel on Multidistrict Litigation even assigns a court to hear the multiple pending challenges to the rules. *See* 28 U.S.C. 2112(a). Indeed, petitioners explain seeking emergency relief by noting that March 16 is the "tenth day after the issuance of the challenged rule." Pet. 1. That fact does nothing to establish the need for a stay. And to the extent petitioners intend to urge

this Court to act before venue is determined—in the absence of any immediate harm—the Court should reject such forum shopping.

Even if this Court considers petitioners' premature stay motion, it should be denied. Petitioners are not likely to succeed on the merits because the rules fit comfortably within the Commission's long-standing authority to require the disclosure of information important to investors in making investment and voting decisions and are consistent with the Commission's prior exercise of that authority. The rules require factual disclosures tailored to each company's facts and circumstances. A robust record supports the Commission's findings and the Commission's conclusions were both reasonable and reasonably explained. Nor have petitioners shown that their claimed injuries—which are speculative and remote—outweigh the harm of staying rules that will provide significant benefits to the investing public.

## BACKGROUND

Disclosure of information to facilitate informed investment and voting decisions has been a central pillar of the federal securities laws since their enactment. *See* Mot. Ex. A ("Final Rules") 59–72. In the Securities Act of 1933, Congress authorized the Commission to require that issuers offering and selling securities include specified information in their registration statements—such as the general character of the issuer's business and certain financial information—as

well as "such other information … as the Commission may by rules or regulations

require as being necessary or appropriate in the public interest or for the protection

of investors."  15 U.S.C. 77g(a)(1), 77aa.

Likewise under the Exchange Act, certain issuers must register securities

with the Commission by filing a registration statement containing "[s]uch

information, in such detail … as the Commission may … require[] as necessary or

appropriate in the public interest or for the protection of investors, in respect of"

certain topics, including "the organization, financial structure, and nature of the

business."  15 U.S.C. 78*l*(b), (g); *see also* 15 U.S.C. 78m(a).

For decades, the Commission has advanced its core mission of protecting

investors and facilitating efficient markets by requiring disclosure about risks

companies face, including those posed by various environmental matters that affect

those companies.  For example, in 1982 the Commission adopted rules requiring

disclosure about litigation and business costs stemming from compliance with

environmental protection laws.  *See* Final Rules 66–67.  And in 2010, the

Commission issued guidance on applying existing disclosure requirements to

climate-related risks and their impacts on an issuer's business or financial

condition.  *See id.* at 13–14, 66–67.

But as the Commission determined in promulgating the Final Rules, these

existing disclosures were inconsistent, fragmented, and difficult for investors to

compare across companies and reporting periods. *Id.* at 12. The Commission accordingly adopted the rules to provide "more complete and decision-useful information about the impacts of climate-related risks on registrants, improving the consistency, comparability, and reliability of climate-related information for investors." *Id.*

The Commission explained that these risks, and a company's response, "can significantly affect the company's financial performance and position." *Id.* at 10. And numerous comments from investors and registrants demonstrated that many investors currently seek this information "so as to inform their investment and voting decisions." *Id.* The Commission found that the Final Rules will provide investors with information that "will assist [them] in making decisions to buy, hold, sell, or vote securities in their portfolio." *Id.* at 11.

In general terms, the rules require registrants to disclose four categories of information in certain circumstances. *See* Final Rules 24–35.

- A registrant must disclose climate-related risks that it determines have already or will likely have a material impact on its business, and how it considers those impacts as a part of its strategy and financial planning. *Id.* at 853–55 (Item 1502(a)-(d)).

- *If* it has adopted or uses transition plans, scenario analysis, internal carbon prices, or climate-related targets and goals, it must disclose information about those metrics. *Id.* at 846–47, 855–58 (Rule 14-02(e) & (h) of Regulation S-X, Items 1502(e)-(g), 1504)).

- *If* a registrant's board of directors or managers play a role in overseeing these material climate risks, it must disclose that role.

4

Registrants must also disclose any processes they have for identifying and managing those risks. *Id.* at 852–53, 856–57 (Items 1501 & 1503).

- *If* it is a "large accelerated filer" or an "accelerated filer" that is not a "smaller reporting company" or "emerging growth company," *see* 17 C.F.R. 240.12b-2, it must disclose its direct greenhouse gas ("GHG") emissions and indirect GHG emissions from purchased or acquired electricity, steam, heat, or cooling, but only if those emissions are material to investors. Final Rules 858–67 (Items 1505–06).

The rules also require registrants to make certain disclosures in their audited financial statements regarding the effect of severe weather events and other natural conditions and describe how any estimates or assumptions used to produce their financial statements were materially impacted by these events and conditions. *Id.* at 843–47 (Article 14 of Regulation S-X).

The Commission adopted "delayed and staggered compliance dates" for the Final Rules that "vary according to the filing status of the registrant." Final Rules 588. In no case, however, will any issuer be required to make any disclosures under the rule until 2026. As a large accelerated filer with a fiscal year beginning on January 1, Mot. Ex. E, ¶¶ 7, 14, Liberty Energy will not be required to comply with any of these rules "until its Form 10-K for fiscal year ended December 31, 2025, due in March 2026." Final Rules 590. And it will not be required to disclose GHG emissions until 2027. *Id.* Accelerated filers need not make these disclosures until 2027 and 2029, respectively, and non-accelerated filers are not required to make any disclosures until 2028 at the earliest. *Id.* at 589.

5

## ARGUMENT

### I.   Petitioners' requests for relief are premature.

**A.**    Petitioners failed to file a motion with the Commission seeking a stay, as required by Federal Rule of Appellate Procedure 18(a)(1), which provides that "[a] petitioner must ordinarily move first before the agency for a stay pending review of its decision or order."  A motion seeking a judicial stay "must" show that moving before the Commission "would be impracticable," or "state that, a motion having been made, the agency denied the motion or failed to afford the relief requested."  *Id.* 18(a)(2)(A); *see also* 15 U.S.C. 78y(c)(2).  Petitioners' motion should be denied for failing to comply with these requirements.

Petitioners insist that a comment letter submitted more than 17 months ago sufficed.  Mot. 3 n.1.  But that letter did not provide the Commission with an opportunity to address specific arguments for a stay of the Final Rules as adopted, including the impact of extended compliance dates.  *See Alimi v. Ashcroft*, 391 F.3d 888, 893 (7th Cir. 2004).  Nor can petitioners excuse their failure by pointing to counsel's statement (cited Mot. 3 n.1)—made before any motion was filed explaining the claimed basis for a stay—that the Commission would oppose improper and premature relief from this Court.

**B.**    Petitioners' request for relief before the process that Congress established for determining venue is premature.  Petitioners ask this Court to rule

by March 16, 2024, Pet. 1, asserting that they must "imminently" prepare internal processes for compliance with the Final Rules, *see* Mot. Ex. E, ¶¶ 14, 16, 24; *id.* Ex. F, ¶ 12.  But petitioners fail to demonstrate that they must take any action before March 16, and they do not identify any other imminent harm that would justify relief by that date.  5th Cir. R. 27.3.  Nor, given the compliance deadlines, could they reasonably do so.

Because petitions for review challenging the Final Rules have been filed in multiple circuits,[1] litigation concerning the Final Rules will soon be consolidated in one court of appeals.  That court will have sufficient time to rule on any preliminary motions.  Petitioners note that Section 2112(a)(4) allows a court to issue an order staying the effective date of an agency action, Mot. 3, which may thereafter be "modified, revoked, or extended," 28 U.S.C. 2112(a)(4).  But such orders may be issued only "to the extent authorized by law."  *Id.*  And, as discussed above, there is no justification for petitioners' request for emergency relief before the multi-circuit lottery occurs.  Because "considerations of comity" require "courts of coordinate jurisdiction and equal rank" to "avoid the waste of duplication" and "avoid rulings which may trench upon the authority of sister courts," this Court should decline to act in this emergency posture.  *West Gulf Mar.*

---

[1] *Ohio Bur. of Workers' Comp. v. SEC*, 24-3220 (6th Cir. Mar. 13, 2024); *Iowa v. SEC*, No. 24-1522 (8th Cir. Mar. 12, 2024); *West Virginia v. SEC*, 24-10679 (11th Cir. Mar. 6, 2024).

*Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–32 (5th Cir. 1985) (quotation omitted).

**C.**    Additional venue concerns also militate against the early relief petitioners seek.  Absent a showing by either petitioner that it is both a "person aggrieved" by the Final Rules and "resides" or has its "principal place of business" in the Fifth Circuit, 15 U.S.C. 77*i*(a), this Court may not adjudicate this petition. *See Ga. Repub. Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir. 2018).  Neither petitioner can make such a showing.

Liberty Energy is subject to the Final Rules but does not claim to reside or have its principal place of business in this circuit.  Nomad Proppant Services claims its principal place of business is in Texas, Pet. 3, but it is not required to make any disclosures under the Final Rules.  Petitioners attempt to establish Nomad's standing by generally asserting that compliance with the Final Rules will require Liberty Energy to "investigate" Nomad to meet its own obligations, Mot. Ex. E, ¶ 32; *see id.* Ex. F, ¶ 10.  But the assertion that the Final Rules will necessarily impose any costs on Nomad fundamentally misunderstands the rules' operation.

The Final Rules require a description of climate-related risks "that have materially impacted or are reasonably likely to have a material impact on *the registrant*."  Final Rules 853 (Item 1502(a)) (emphasis added).  Because the

8

"registrant" here is Liberty Energy, petitioners are incorrect that the Final Rules

will require Nomad to "begin reporting [its] climate-related risks."  Mot. Ex. F,

¶ 11.  Nor do the rules necessarily require Liberty Energy to report Nomad's GHG

emissions.  The Final Rules provide a registrant with the discretion to choose its

organizational boundaries to calculate its emissions metrics, so long as it

"describe[s] the method used to determine those boundaries."  Final Rules 252,

860 (Item 1505(b)(1)).

## II.    Petitioners have not shown that a stay is warranted.

Petitioners meet none of the stay requirements.  They are unlikely to succeed

on the merits, there is no imminent irreparable harm, and the balance of the

equities does not favor the imposition of such extraordinary relief.  *See Wages &*

*White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1135 (5th Cir. 2021).

### A.    Petitioners are unlikely to succeed on the merits.

#### 1.    The Final Rules are within the Commission's statutory authority.

Petitioners' argument (at 7–21) that the Final Rules violate the major-

questions doctrine fails because the rules are authorized by the plain text of the

federal securities laws and consistent with longstanding interpretations of the

Commission's authority under those provisions.  *See West Virginia v. EPA*, 597

U.S. 697, 724 (2022).

9

The Commission's organic statutes authorize it to require certain companies to disclose—in connection with public offerings and periodic reports—not only certain enumerated information, but also other information that the Commission "may … require as being necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. 77g(a)(1); *see also* 15 U.S.C. 78*l*(b) & (g), 78m(a). Read in the context of the enumerated disclosures and the objectives of the Securities Act and the Exchange Act, *see NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669–70 (1976), these provisions authorize the Commission to ensure that public company disclosures provide investors with not just "balance-book" information (*contra* Mot. 13–15), but with information important to making informed investment and voting decisions. *See, e.g.*, *Lorenzo v. SEC*, 139 S. Ct. 1094, 1103 (2019); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 178 (2015); *Basic Inc. v. Levinson*, 485 U.S. 224, 230 (1988); Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74, 74 (preamble); 15 U.S.C. 78b; H.R. Rep. No. 73-1383, at 6–7 (1934). Such disclosure facilitates the securities laws' core objectives of protecting investors, facilitating capital formation, and promoting market efficiency. *See, e.g.*, 15 U.S.C. 77b(b), 78c(f).

Relying on the authority that Congress provided in the Securities Act and the Exchange Act, the Commission has amended its disclosure requirements dozens of times over the last 90 years based on its reasoned determination that the required

10

information, including disclosures about material risks, would be important to

investment and voting decisions.  *See* Final Rules 62–67.  And, here, evidence

before the Commission strongly supported the findings that "climate-related risks

can affect a company's business and its financial performance and position in a

number of ways," and that investors "expressed the need for more reliable

information about the effects of climate-related and other severe weather events or

other natural conditions on issuers' businesses, as well as information about how

registrants have considered and addressed climate-related risks when conducting

operations and developing business strategy and financial plans." *Id.* at 67.  This

was underscored by the fact that many investors, including some with hundreds of

billions of dollars invested, are already using information regarding climate-related

risks to inform their investment and voting decisions and many registrants

voluntarily provide such information.  *See, e.g.*, *id.* at 641–43.  Responding to

investors' needs, the Final Rules provide "more reliable and decision-useful

disclosure of strategies and risks that a registrant has determined will likely

materially impact its business, results of operations, or financial condition."  Final

Rules 67–68.

Contrary to petitioners' claim (Mot. 9), the Commission has never

disclaimed statutory authority to require disclosure of the type of information

required by the Final Rules.  While the Commission has declined to require

11

disclosure of "public policy and sustainability matters," "political spending," or various types of "social information" or "social practices," *see Business and Financial Disclosure Required by Regulation S-K*, 81 Fed. Reg. 23,916, 23,970 (Apr. 22, 2016); *Environmental and Social Disclosure*, 40 Fed. Reg. 51,656, 51,656 (Nov. 6, 1975), as discussed above, pp. 3, 10–11, *supra*, it has required certain disclosures related to environmental matters that impact registrants for decades. And it has further exercised its statutory authority to require disclosures regarding risks facing registrants on numerous occasions. *See* Final Rules 63–65. Consistent with that approach, the Commission here did not "consider the promotion of social goals unrelated to the objectives of the federal securities laws." 81 Fed. Reg. at 23,971. Rather, it promulgated the Final Rules to facilitate informed investment and voting decisions. For similar reasons, petitioners are wrong in arguing that the Commission claimed the authority to "demand almost anything [it] wants" or to require disclosure "just for disclosure's sake," Mot. 13, 15.

Petitioners ignore the Commission's clear explanation in the release when they assert that the Final Rules purport to "resolve one of today's most hotly debated political issues." Mot. 9 (quotation omitted). The Commission emphasized that it adopted the rules to protect investors, promote market efficiency, and to facilitate capital formation, "not to address climate-related issues

more generally," and that the Commission "has been and remains agnostic about whether or how registrants consider or manage climate-related risks."  Final Rules 18–19.

For the same reasons, petitioners are incorrect that the Final Rules involve matters outside of the Commission's "core competencies."  Mot. 9–10 (quotations omitted).  Petitioners note that the Environmental Protection Agency requires certain disclosures related to GHG emissions, Mot. 10–12, but the EPA's Greenhouse Gas Reporting Program and the Final Rules "have different statutory authorizations and purposes, regulate different entities, collect different information, and would use that data in different ways."  EPA Comment on SEC Proposed Rule (June 18, 2022).[2]

Finally, petitioners incorrectly claim that the Commission may only require disclosure of "information that is *actually* material to the particular company."  Mot. 15.  Although a material misrepresentation or omission is an element of certain antifraud claims under the Exchange Act and Commission rules, *see* 15 U.S.C. 78j(b), 78n(a); 17 C.F.R. 240.10b-5, 240.14a-9(a), the word "material" is nowhere to be found in the provisions granting the Commission authority to require disclosures.  Rather, the "fundamental purpose" of the securities laws is substituting "a philosophy of full disclosure for the philosophy of caveat emptor,"

---

[2] https://www.sec.gov/comments/s7-10-22/s71022-20132508-302990.pdf.

*Lorenzo*, 139 S. Ct. at 1103, not just the disclosure of information that, if omitted, would be sufficient to state a securities fraud claim.

Petitioners' argument that the rules' materiality limits are illusory (Mot. 18–20) misunderstands the operation of certain provisions of the Final Rules, most prominently disclosures related to GHG emissions. Large accelerated filers are not required to disclose such emissions whenever they "face[] climate-change transition risk," Mot. 18 (quotation omitted), but rather are required to do so only "if such emissions are material." Final Rules 859 (Item 1505(a)(1)). And the Commission did not "effectively deem[] materiality triggered when a company faces climate-change transition risk," Mot. 18 (quotation omitted). In fact, there are circumstances in which those emissions would not be material despite such a risk, as the Commission explained: "the fact that a registrant is exposed to a material transition risk does not necessarily result in its … emissions being de facto material to the registrant." Final Rules 246–47.

## 2.    The Final Rules are consistent with the First Amendment.

Nor are petitioners likely to succeed on their First Amendment claim. Mot. 24–27. Congress has deemed the securities markets "an important national asset which must be preserved and strengthened." 15 U.S.C. 78k-1(a)(1)(A). The Commission, therefore, "has a substantial interest through the securities laws in making capital markets more open and efficient" by giving "all investors equal

14

access to all relevant information." *United States v. Wenger*, 427 F.3d 840, 850–51 (10th Cir. 2005); *Chamber of Com. v. SEC*, 85 F.4th 760, 771 (5th Cir. 2023) ("The SEC has a legitimate interest in promoting the free flow of commercial information." (citation omitted)).  Here, the Commission reasonably found that the Final Rules ensure that investors have access to consistent, comparable information important to their investment and voting decisions, and tailored the rules to serve those interests.  *See* Final Rules 72.  The resulting disclosures survive scrutiny.

Petitioners invoke a concurring opinion's statement in a different context that "consumer curiosity alone is not a strong enough state interest to sustain a compelled commercial disclosure."  Mot. 26 (citing *AMI v. U.S. Dep't of Agric.,* 760 F.3d 18, 33 (D.C. Cir. 2014) (Kavanaugh, J., concurring)).  But the strong evidence before the Commission of investor need for, and use of, information regarding climate-related risks belies the notion that the Final Rules simply sate curiosity.  Moreover, courts have long recognized that securities regulation "involves a different balance of concerns and calls for different applications of First Amendment principles."  *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1109 (D.C. Cir. 2011) (quotation omitted); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *SEC v. Wall St. Publ'g Inst., Inc.*, 851 F.2d 365, 373 (D.C. Cir. 1988).  And the disclosure of important, decision-useful information

furthers Congress's "basic purpose … to substitute a philosophy of full disclosure for the philosophy of caveat emptor." *Lorenzo*, 139 S. Ct. at 1103.

Petitioners erroneously assert that the Final Rules require "disclosure of political issues under the guise of disclosure requirements" and are therefore subject to strict scrutiny. Mot. 24 (citing *NAM v. SEC*, 800 F.3d 518 (D.C. Cir. 2015)). This argument mischaracterizes the disclosures required under the Final Rules for the reasons discussed above. The disclosures are not "an *integral* part of a live, contentious political or moral debate." *Free Speech Coal. v. Paxton*, No. 23-50627, 2024 WL 982225, at *14 (5th Cir. Mar. 7, 2024) (emphasis added).

Moreover, *National Institute of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361 (2018), does not dictate the application of strict scrutiny to all disclosure requirements that do not fall within two narrowly construed categories, as petitioners argue. Mot. 24. *NIFLA* held that less-stringent review under *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 650 (1985), did not apply to a regulation that required pregnancy clinics to deliver a "government-drafted" message that was unrelated to their services and fundamentally at odds with their mission. 138 S. Ct. at 2371–72. But the Court did not purport to narrow or overrule prior cases "appl[ying] a lower level of scrutiny to laws that compel disclosures in certain contexts." *Id*. at 2372. Nor did

16

it decide that disclosures that fall outside of *Zauderer*'s ambit are subject to strict scrutiny. *Id*. at 2375.

Petitioners also contend that *NIFLA* requires strict scrutiny because "climate change in general is a politically charged matter." Mot. 24. But the rules require disclosure not about climate change, but about material climate-related *risks* and impacts that companies face. Nor does *NIFLA* say that every factual statement about a potentially controversial issue is necessarily controversial. *Chamber of Com.*, 85 F.4th at 770.

The Final Rules require the disclosure of factual, non-controversial information in the context of commercial speech, and thus merit less stringent *Zauderer* review. Unlike in *NAM*, companies subject to the Final Rules are not required to utter any government-dictated language, much less language that conveys "moral responsibility" or an "ethical[] taint[]." 800 F.3d at 530. Companies themselves determine, for example, if they are subject to material climate-related risks, whether any targets or goals they have set have a material effect on their business, and whether certain GHG emissions are material. If, and only if, they so determine, companies then disclose factual information regarding those impacts. *See* Final Rules 853–61 (Items 1501–05). Moreover, the Final Rules do not force companies to take a side in the climate debate by "expressly demand[ing] that companies '[d]escribe the board of directors' oversight of

17

climate-related risks.'"  Mot. 25.  In fact, *no* disclosure of any board oversight is required if companies do not already engage in such oversight.

Petitioners similarly misdescribe the Final Rules in asserting that the required disclosures are controversial because they somehow favor so-called "green" companies.  Mot. 25.  Depending on the circumstances, the scenario petitioners posit—the potential loss of subsidies for "green technology"—might require disclosures, for example if a registrant adopted a transition plan based on such subsidies.  *See* Final Rules 855 (Item 1502(e)).

Even if the intermediate scrutiny for commercial speech described in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980), were to apply, the Final Rules would withstand scrutiny because they "are 'narrowly tailored' to achieve a substantial government goal." *United States v. Phillip Morris USA Inc.*, 566 F.3d 1095, 1143 (D.C. Cir. 2009) (quotations omitted).  This Court's recent decision in *Chamber of Commerce* forecloses petitioners' argument that the disclosures do not implicate commercial speech.  85 F.4th at 770–71.  Although petitioners suggest that the rules are insufficiently tailored (Mot. 27), the rules minimize any potential impact on the registrant's pre-existing practices or views by triggering disclosures based on decisions registrants have already made in managing their business—in many

18

instances requiring disclosure only if the registrant has already decided to utilize certain metrics, targets, goals, or courses of business.

### 3.     Petitioners' APA arguments are meritless.

The Final Rules are reasonable, reasonably explained, and supported by a robust record.

As discussed, the Final Rules are consistent with the Commission's historical understanding of its authority and therefore there is no "switch in its position" on this point requiring an explanation. *Contra* Mot. 22 (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). And the Commission thoroughly explained its rationale for expanding the disclosures as compared with the status quo. *E.g.*, Final Rules 13–14.

The Commission also reasonably concluded—based upon "dozens of articles" (Mot. 22) that studied tens of thousands of issuers—that the academic literature shows a "well-established link between climate-related risks and firm fundamentals." Final Rules 646. Petitioners selectively quote a footnote that they claim "admits" that there are "'contradictory empirical results' regarding 'climate-related risks and asset prices.'" Mot. 23. In fact, the Commission found "contradictory" evidence about a single issue: "stock returns and carbon emissions." Final Rules 648 n.2745. That single study does not detract from the Commission's finding that, "[c]ollectively," the research indicates that "disclosures

about climate-related risks, when they are made, become priced into the value of a firm." *Id.* at 649.  This is a far cry from the Commission failing to make "tough choices" or relying "exclusively and heavily upon two relatively unpersuasive studies." *Bus. Roundtable v. SEC*, 647 F.3d 1144, 1150–51 (D.C. Cir. 2011) (cited at Mot. 22–23).

Petitioners are on no firmer ground in arguing that the Rules are unlawful because the "vast majority" of the cited articles "were never mentioned in the proposed rule."  Mot. 22–23.  The only example of such a cite (Mot. 23) was provided during the notice-and-comment period by a commenter who was *critical* of the proposal.  Final Rules 646–47 n.2737.  Far from crediting that article, the Commission identified its "limitations"—including, as petitioners agree, that the article did not "specifically address climate risk but instead looked only at 'social issues more generally.'"  Mot. 23 (quoting Final Rules 647 n.23).  Further, that article was publicly available, and the agency did not base its conclusion on redacted, staff-prepared studies available "only to the agency."  *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 237 (D.C. Cir. 2008) (cited at Mot. 23).

Finally, the Rules do not mandate "highly subjective and speculative" disclosures.  Mot. 23.  To the contrary, registrants must make "objective" determinations about climate-related risks (Final Rules 106), and the Commission

"confirm[ed] that the final rules do not require registrants to speculate in their disclosures" (Final Rules 197). *See also id.* at 106 n.383, 584.

**B.    Petitioners will not be irreparably injured without a stay.**

To demonstrate irreparable harm, petitioners must demonstrate both a "significant threat of injury from the impending action" and that "the injury is imminent." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023). Petitioners have not made either showing.

The Final Rules will not require Liberty Energy to make any disclosures until 2026 at the earliest, and many of the disclosures will not be required until 2027 or later. *See* Final Rules 588–92. Anticipatory efforts to comply with regulations that are not effective and require no disclosures for years do not demonstrate irreparable harm. *See A. O. Smith Corp. v. FTC*, 530 F.2d 515, 527 (3d Cir. 1976). This case thus stands in sharp contrast to the sole case petitioners cite (Mot. 27), *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021), which focused on the "immediate and irreversible" effects of a mandate to develop and implement COVID-19 vaccination and testing policies within 30 or 60 days: the "liberty interests of reluctant individual recipients to put a choice between their job(s) and their jab(s)," the "effects of a lost or suspended employee," "compliance and monitoring costs," the "diversion of resources," or the possibilities of penalties. *Id.* at 618.

Petitioners also claim they will imminently suffer First Amendment harms because their boards will be "forced to engage in the climate-change dialogue." Mot. 28.  But nothing in the Final Rules requires boards to engage in any public debates about climate change.  Rather, the rules focus on identifying material climate-related risks to the company and the impacts those risks have or will likely have on its business.  *See, e.g.*, Final Rules 850 (defining climate-related risk), 853–54 (Item 1502).  And the rules require disclosure of board oversight of climate-related risks only if that oversight already occurs.  *Id.* at 168–69 (rules do not seek to "influence registrants' decisions about how to manage climate-related risk" and instead "focus on disclosure of registrants' existing or developing climate-relate risk governance practices"), 852 (Item 1501(a)).  Even if the rules required the board to engage in some discussion, a corporation does not suffer First Amendment harm when its board is required to engage in internal dialogue about an issue.  Indeed, the Supreme Court has distinguished regulations that burden a "right to freely … speak to the public at large" from those that "define how corporations govern themselves," which instead "govern speech by a corporation to *itself*."  *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 15 n.10 (1986).  Finally, even if there were a colorable First Amendment harm— which there is not—petitioners have not shown that it is imminent.

**C.    The remaining factors weigh against a stay.**

Petitioners' speculative and remote assertions of harm do not outweigh the injuries to the government and public interest—which merge in this context, *see Nken v. Holder*, 556 U.S. 418, 435 (2009)—that a stay would cause. The information provided by the Final Rules "will enable investors to better assess material risks in climate-related reporting and facilitate comparisons across firms and over time." Final Rules 646. These informational benefits will also "improve liquidity and reduce transaction costs for investors … and may lower firms' cost of capital." *Id.* at 649. Investors will still make decisions on whether to buy or sell securities or vote on matters based on the risks implicated by the Final Rules even if they are delayed, but they will not have benefit of the information the rules provide.

## CONCLUSION

For these reasons, a stay should be denied.

Respectfully submitted,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
DANIEL STAROSELSKY
Assistant General Counsels

/s/ John R. Rady
JOHN R. RADY
Appellate Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4997 (Rady)

March 13, 2024

## CERTIFICATE OF COMPLIANCE

I certify that this opposition complies with the type-volume limitation of 5th Cir. Rule 27.4 and Fed. R. App. P. 27(d)(2) because it contains 5,153 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B).

I also certify that this opposition complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface—Times New Roman, 14 point—using Microsoft Word.

/s/ John R. Rady
John R. Rady

March 13, 2024